UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

CHRISTINA OYOYO,

                        Plaintiff,

v.                                                     1:18-CV-1076
                                                            (WBC)
COMMISSIONER OF SOCIAL SECURITY,

                        Defendant.
_____

APPEARANCES:                                     OF COUNSEL:

LAW OFFICES OF KENNETH HILLER, PLLC    ELIZABETH HAUNGS, ESQ.
  Counsel for Plaintiff                         JUSTIN JONES, ESQ.
6000 North Bailey Ave, Ste. 1A              KENNNETH HILLER, ESQ.
Amherst, NY 14226

U.S. SOCIAL SECURITY ADMIN.              REBECCA ESTELLE, ESQ.
OFFICE OF REG'L GEN. COUNSEL – REGION II
  Counsel for Defendant
26 Federal Plaza – Room 3904
New York, NY 10278

William B. Mitchell Carter, U.S. Magistrate Judge,

## MEMORANDUM-DECISION and ORDER

       The parties consented, in accordance with a Standing Order, to proceed before the undersigned.  (Dkt. No. 14.)  The court has jurisdiction over this matter pursuant to 42 U.S.C. § 405(g).  The matter is presently before the court on the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.  For the reasons discussed below, Plaintiff's motion is denied and the Commissioner's motion is granted.

**I.**        **RELEVANT BACKGROUND**

### A. Factual Background

Plaintiff was born in 1987. (T. 163.) She completed high school. (T. 372.) Generally, Plaintiff's alleged disability consists of "mental illness." (T. 372.) Her alleged disability onset date is November 29, 2011. (T. 163.) Plaintiff performed past relevant work as a waitress. (T. 25.)

### B. Procedural History

On July 13, 2012, Plaintiff applied for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act. (T. 163.) Plaintiff's application was initially denied, after which she timely requested a hearing before an Administrative Law Judge ("the ALJ"). On December 10, 2013, Plaintiff appeared before the ALJ, Eric Glazer. (T. 12-39.) On July 25, 2014, ALJ Glazer issued a written decision finding Plaintiff not disabled under the Social Security Act. (T. 164-182.) On December 15, 2015, the Appeals Council ("AC") granted Plaintiff's request for review and remanded her case to the ALJ for further proceedings. (T. 183-188.) On September 22, 2016, and again on May 10, 2017, Plaintiff appeared before ALJ Glazer. (T. 75-99, 100-156.) ALJ Glazer issued an unfavorable decision on June 22, 2017. (T. 12-39.) On August 3, 2018, the AC denied Plaintiff's request for review, rendering the ALJ's 2017 decision the final decision of the Commissioner. (T. 1-6.) Thereafter, Plaintiff timely sought judicial review in this Court.

### C. The ALJ's Decision

Generally, in his decision, the ALJ made the following findings of fact and conclusions of law. (T. 17-32.) First, the ALJ found Plaintiff had not engaged in substantial gainful activity since July 13, 2012, the application date. (T. 17.) Second,

the ALJ found Plaintiff had the severe impairments of: polysubstance dependence, depression, anxiety, post-traumatic stress disorder ("PTSD"), and schizophrenia. (T. 18.)  Third, the ALJ found Plaintiff did not have an impairment that meets or medically equals one of the listed impairments located in 20 C.F.R. Part 404, Subpart P, Appendix. 1. (*Id*.)  Fourth, the ALJ found, based on all of the impairments, including the substance use disorders, Plaintiff had the residual functional capacity ("RFC") to perform work at all exertional levels, with the following non-exertional limitations:

> [Plaintiff] could occasionally respond appropriately to supervisors, coworkers and the public; could deal with changes in the work setting only with regard to simple, work-related decisions; could accommodate time off tasks with normal breaks; and would be absent twice per month, at two-hour intervals each, for prearranged behavioral health treatment appointments, including vicinity travel to and from the worksite.

(T. 20.)  Fifth, the ALJ determined Plaintiff was unable to perform her past relevant work, and there were no jobs that existed in significant numbers in the national economy Plaintiff could perform. (T. 25.)

Sixth, the ALJ found, if Plaintiff stopped the substance use, the remaining limitations would cause more than a minimal impact on her ability to perform basic work activities; and therefore, Plaintiff would continue to have the severe impairments of depression, anxiety, PTSD, and schizophrenia. (T. 26.)  Seventh, the ALJ found, if Plaintiff stopped the substance use, Plaintiff would not have an impairment or combination of impairments that meets or medically equals any of the Listings. (*Id*.)  Eighth, the ALJ found, if Plaintiff stopped substance use, she would have the RFC to perform a full range of work at all exertional levels, with the following non-exertional impairments:

> [Plaintiff] could not handle, sell or prepare controlled narcotic substances or alcoholic beverages; is limited to performing simple, routine and repetitive tasks; could use judgment only with regard to simple work-related decisions; could frequently respond appropriately to supervisors; and would be absent once per month, at two-hour intervals each, for prearranged behavioral health treatment appointments, including vicinity travel to and from the worksite.

(T. 27.) Ninth, the ALJ determined if Plaintiff stopped substance use, she would still be unable to perform past relevant work; however, there were a significant number of jobs in the national economy Plaintiff could perform. (T. 31.)

## II.   THE PARTIES' BRIEFINGS ON PLAINTIFF'S MOTION

### A.   Plaintiff's Arguments

Plaintiff makes two separate arguments in support of her motion for judgment on the pleadings. First, Plaintiff argues the ALJ erred in performing his materiality analysis. (Dkt No. 11 at 22-28.) Second, and lastly, Plaintiff argues the ALJ failed to evaluate a federal agency's disability verification. (*Id*. at 28-30.) Plaintiff also filed a reply in which she reiterated her original arguments. (Dkt. No. 13.)

### B.   Defendant's Arguments

In response, Defendant makes one argument. Defendant argues the ALJ's materiality finding was proper. (Dkt. No. 12 at 8-14.)

## III.   RELEVANT LEGAL STANDARD

### A.   Standard of Review

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were

4

not applied, or it was not supported by substantial evidence.  *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971).  Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld.  *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992).  In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner],

even if it might justifiably have reached a different result upon a *de novo* review."

*Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

## B.     Standard to Determine Disability

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. *See* 20 C.F.R. § 416.920. The Supreme Court has recognized the validity of this sequential evaluation process. *See Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987). The five-step process is as follows:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a 'residual functional capacity' assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*McIntyre v. Colvin,* 758 F.3d 146, 150 (2d Cir. 2014).

## IV.   ANALYSIS

As an initial matter, this case involves drug addiction and alcoholism ("DAA") that the ALJ determined was material to Plaintiff's case. 20 C.F.R. § 416.935(b)(1); *see also* SSR 13-2p, 2013 WL 621536, at *4 (S.S.A. Feb. 20, 2013)[1]. In such cases, even though a plaintiff initially meets the traditional definition of "disabled" (inability to engage

---

[1] In 1996, Congress enacted the Contract with America Advancement Act ("CAAA"), to provide that *"[a]n individual shall not be considered ... disabled ... if alcoholism or drug addiction would ... be a contributing factor material to the Commissioner's determination that the individual is disabled."* Pub.L. No. 104–121 § 105(a)(1), 110 Stat. 847 (codified at 42 U.S.C. § 423(d)(2)(C)). This amendment, sometimes referred to in interpretive jurisprudence as the "DAA (drug addiction or alcoholism) Amendment" *alters* the traditional definition of disability. *Cage v. Commissioner of Soc. Sec.,* 692 F.3d 118, 123-124 (2d Cir. 2012), *cert. denied,* - U.S. –, 133 S.Ct. 2881 (2013).

in substantial gainful activity), the ALJ must conduct a secondary analysis to determine whether plaintiff's DAA is material to an initial finding of disability.

A "key factor" in such secondary analysis is whether the plaintiff would still be found disabled if she stopped using drugs or alcohol. *See* 20 C.F.R. § 416.935(b)(2). The ALJ first determines whether physical and mental limitations would remain in the absence of substance abuse. *Id*. If so, the ALJ then decides whether those remaining limitations are disabling on their own. *Id*. If so, the plaintiff is considered disabled within the meaning of the Act notwithstanding her drug addiction or alcoholism. *Id*. § 416.935(b)(2)(ii). If not, alcohol or substance abuse is considered material, and the plaintiff is not eligible for benefits. *Id*. § 416.935(b)(2)(i).

Plaintiff argues evidence does not exist to support the ALJ's conclusion that her impairments would improve to the point of non-disability in absence of substance abuse because the medical examiner, Richard Anderson, Ph.D., testified only to Plaintiff's schizophrenia symptoms and did not mention Plaintiff's mood disorder. (Dkt. No.11 at 23.)[2] Plaintiff also asserts the ALJ impermissibly "cherry picked" the record. (*Id*. at 23-28.) For the reasons outlined below, the ALJ's determination was proper and supported by substantial evidence in the record.

The ALJ's RFC determination, absent substance abuse, was supported by substantial evidence in the record. In formulating Plaintiff's RFC, absent substance abuse, the ALJ relied on objective medical evidence in the record, Plaintiff's activities, and medical opinion evidence. To be sure, Dr. Anderson specifically testified that in the absence of alcohol and drug use, Plaintiff would generally not have a problem with

---

[2] Of note, the ALJ did not find Plaintiff had the severe impairment of mood disorder and Plaintiff does not question the ALJ's step two determination.

symptoms of schizophrenia. (T. 119.) However, the ALJ relied on Dr. Anderson's statement as one factor in his overall RFC determination.

In formulating his RFC, the ALJ relied on the medical opinion evidence provided by Dr. Anderson, consultative examiner Dr. Santarpia, and non-examining State agency medical examiner, Dr. Echevarria, that Plaintiff's substance abuse worsened her symptoms. *Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 127 (2d Cir. 2012) (ALJ properly relied on statements that plaintiff's substance abuse worsened her symptoms, she only attempted suicide when under the influence, and plaintiff asserted her abuse was not helpful to her mental health). The ALJ afforded "great weight" to the opinions of the consultative medical examiners, "but only insofar as both sources determined that [Plaintiff's] work-related limitations were predominantly the result of her polysubstance abuse." (T. 30.) Indeed, Dr. Santarpia noted Plaintiff's "difficulty with mood may have its etiology based in alcohol and substance abuse." (T. 576.) The doctor also stated Plaintiff's difficulties were "caused by chronic use of alcohol and substance." (T. 577.) Dr. Echevarria concluded Plaintiff's "limitations are caused by her polysubstance abuse." (T. 600.)

The ALJ acknowledged Dr. Anderson's testimony that Plaintiff's substance abuse "influenced her behavior greatly." (T. 29, 119.) The ALJ also specifically noted Dr. Anderson's testimony that in the absence of substance abuse Plaintiff would not have problems with symptoms of schizophrenia and that substance abuse was of "critical importance" in terms of the presence of her other symptoms. (T. 29, 119.)

In support of his RFC, the ALJ also relied on objective examination findings from periods of sobriety. *Cage,* 692 F.3d at 127 (ALJ properly relied on mental status

8

evaluations which, "though not ideal in all respects," demonstrated plaintiff "made good eye contact," was "cooperative," spoke normally, had coherent or linear thought processes, had average intelligence and knowledge, and was alert).  The ALJ noted Plaintiff's presentation and findings on mental status examinations were "variable."  (T. 29.)  However, examinations contained findings which supported the RFC.  In February 2017, Plaintiff denied hallucinations, mood swings, and irritability.  (T. 29, 934.)  She reported that her mood was good, and her anxiety was manageable.  (T. 29, 934.)  On exam Plaintiff was slightly disheveled, but appropriately dressed.  (T. 934.)  Her speech was clear, her affect was constricted, her thought process was clear, her thought content was goal directed, she was oriented, her attention and concentration were fair, her memory was intact, but she was a poor historian.  (*Id.*)  In March 2017, Plaintiff mentioned she was depressed because she could not afford the gas bill.  (T. 931.)  She denied hallucinations and mentioned "some" mood swings.  (T. 29, 931.)  On examination Plaintiff's speech was clear with low tone, her mood was fair, her affect was constricted, her thought process was clear, her thought content was goal directed, she was orientated, her attention and concertation were fair, her memory was grossly intact but she was a poor historian, her abstract reasoning was limited, and she had some insight and judgment.  (T. 931.)

    Lastly, in formulating his RFC, the ALJ relied on Plaintiff's testimony that she maintained part-time employment and played a role in her daughter's life.  (T. 29.)  Indeed, Plaintiff testified she worked part-time as a janitor, as a condition of receiving social services funding.  (T. 135.)  When asked if she could perform janitorial work full time, Plaintiff said she could not because she would not "pick it to work."  (T. 137.)  She

also testified she would have trouble performing the work full time because it would prevent her from caring for her school aged child.  (*Id*.)

Therefore, despite Dr. Anderson's specific testimony, substantial evidence in the record, including medical opinions, mental status examinations, and Plaintiff's testimony, supported the ALJ's RFC determination.

Plaintiff also asserts the ALJ "cherry picked" the record because he cited only two treatment notations and ignored others.  (Dkt. No. 11 at 23-27.)  To be sure, an ALJ is entitled to resolve conflicts in the record, but his discretion is not so wide as to permit him to pick and choose only evidence that supports a particular conclusion.  *See Smith v. Bowen,* 687 F.Supp. 902, 904 (S.D.N.Y.1988) (citing *Fiorello v. Heckler,* 725 F.2d 174, 175-176 (2d Cir.1983)).  A review of the record and the ALJ's decision fails to support Plaintiff's assertion.

The ALJ adequately outlined Plaintiff's treatment.  In his RFC analysis, absent substance abuse, the ALJ noted Plaintiff presented for treatment in January 2016, but was discharged in February 2016 for failing to return.  (T. 29, 792.)  The ALJ then discussed intake notations dated April 2016.  (T. 29, 798.)  Plaintiff asserts the April 2016 notations supported greater limitations in functioning.  (Dkt. No. 11 at 25.)  However, despite evidence of positive symptoms present during her April 2016 intake assessment, substantial evidence in the record, as outlined above, supported the ALJ's determination.  The ALJ acknowledged Plaintiff's course of treatment, as well as other evidence in the record such as medical opinion evidence and evidence of part time work, in formulating her RFC absent substance abuse.  Therefore, the ALJ did not impermissibly cherry pick the record.

Lastly, Plaintiff argues the ALJ erred in his determination because he failed to evaluate a federal housing assistance disability verification. (Dkt. No. 11 at 28-30.) Disability decisions by other governmental agencies are not binding on the ALJ, but are "entitled to some weight and should be considered." *Rivera v. Colvin*, 592 F. App'x 32, 33 (2d Cir. 2015) (citing *Hughes v. Heckler,* 598 F.Supp. 765, 767 (W.D.N.Y.1984)). However, the ALJ "is not bound by another agency's disability determination" and so long as the ALJ's "decision was supported by substantial evidence, any alleged failure by the ALJ to consider fully the disability determination by [another agency] does not affect our decision to affirm." *Lohnas v. Astrue*, 510 F. App'x 13, 14-15 (2d Cir. 2013).

At issue is a form dated March 11, 2013. (T. 926.) The form, titled "Request for Verification Rental Assistance Corporation of Buffalo," asked, if Plaintiff was disabled based on the definition of a disabled person per the Department of Housing and Urban Development ("HUD"). (*Id*.) Plaintiff's social worker, who completed the form, checked the box "yes." (*Id*.) As stated by Defendant, the form was not a decision of disability by HUD. (Dkt. No. 12 at 13.) The form equates to a statement of disability provided by a social worker. Because social workers are not acceptable medical sources, and the ultimate determination of disability is reserved to the Commissioner, the ALJ did not err in failing to consider the form in his evaluation. *See* 20 C.F.R. §§ 416.913, 416.927(d). Even if the ALJ was required to review the form, he was not bound by another agency's determination and his decision was supported by substantial evidence. *Lohnas,* 510 F. App'x at 14-15.

Overall, substantial evidence supported the ALJ's materiality determination and RFC. The ALJ relied on the medical opinion evidence in the record, objective treatment

observations, and Plaintiff's activities.  The ALJ properly summarized the evidence and did not impermissibly cherry pick the record.  Lastly, the ALJ did not err in failing to specifically weigh a form seeking rental assistance.

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 11) is **DENIED**; and it is further

**ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 12) is **GRANTED**; and it is further

**ORDERED** that Defendant's unfavorable determination is **AFFIRMED**; and it is further

**ORDERED** that Plaintiff's Complaint (Dkt. No. 1) is **DISMISSED**.

Dated: November 7, 2019

*Bill Carter*
William B. Mitchell Carter
U.S. Magistrate Judge